Rufus Jackson Vick and Bobby Joe Duke, both inmates at the Decatur Community Based Facility, Decatur, Alabama, filed petitions for writ of habeas corpus in the Elmore County Circuit Court. These petitions were denied without a hearing. From these denials by the trial court, appellants bring a consolidated appeal.
The petitions for writ of habeas corpus challenged the Board of Corrections Disciplinary Court's decision to revoke "good time" and to reassign appellants to other institutions. The actions of the disciplinary board were based on an incident in which both men were alleged to have aided and abetted a third inmate to escape the facility. Appellants argue several grounds in support of their assertion that the disciplinary board's decision should be reversed, two of which are as follows:
1. The chairman of the disciplinary board was at least tangentially involved in the incident which was the basis of these proceedings; and
2. The board did not comply with due process requirements in that the decisions made by the board were not based on substantial evidence.
According to the written statements of Willie Anderson, the arresting officer, on September 10, 1982, at approximately 9:25 p.m., he saw inmate William Reid enter the laundry area behind Dormitory B. Anderson noticed that Reid was drunk, so he tried to persuade him to go to the guard's office where he would be charged with a rule violation, but Reid would not cooperate. Other inmates were in the area, so Patrick Halliday was called to assist Anderson.
Reid, at that point, left the laundry area and went into Dormitory B, whereupon Anderson followed him. While Reid was inside Dormitory B, he asked Anderson not to put him in jail, but Anderson did not respond to these pleas. After failing to elicit a response from Anderson, Reid walked toward the rear exit of the dormitory, hesitated at the door, then fled.
Anderson searched adjacent areas but could not find Reid. At approximately 9:45 p.m., Mr. Halliday arrived at the center in response to Anderson's earlier call. After a search of some twenty minutes, Halliday informed the on-duty personnel that Reid had been found. The involvement by appellants in the incident was detailed in a separate statement.
The event that caused the appellants to be taken before the disciplinary board was a minor, yet integral, part of the overall incident outlined above. From these facts, taken from the statements of the corrections official, it is apparent that Mr. Patrick Halliday was directly and personally involved with the events in question. He was also the chairman of the disciplinary board before which appellants were heard. Under the circumstances, it seems very likely that the appellants' right to a fair and impartial hearing was denied. See Ex parteCrear, [Ms. 82-417, November 10, 1983] (Ala. 1983). For this reason, we reverse the order of the trial court and remand with instructions that appellants be given an evidentiary hearing on their petition of writ of habeas corpus.
The appellants also contend that the actions of the disciplinary board were arbitrary and capricious and were not based on *Page 476 
substantial evidence. The only evidence received by the board on the issue of appellants' guilt was a written statement by the arresting officer, Mr. Willie Anderson. That statement reads in part as follows:
 "Mr. Willie Anderson, CO I, in the lawful execution of his duties in dormitory B to observe, calm down, and persuade Inmate William Reid . . ., who was intoxicated, to come to the Officer's office where he was going to be placed under arrest for violation of Rule # 7, to wit: Drunk or Drinking. The results of inmates Vick, Goodman, and Duke actions caused Inmate Reid to flee the center via the rear exit of dormitory B. The actions perpetrated initially involved inmates Vick, Goodman, and Duke pleading with Mr. Anderson to permit Inmate Reid to return to his dormitory and go to bed rather than arresting him for being under the influence of alcoholic beverage. Mr. Anderson did not respond at length to the comments of inmates Vick, Goodman, and Duke, except to say that Inmate Reid's intoxication was his problem and not their own. With this response, the tone of inmates Vick, Goodman, and Duke voice changed to anger. Inmates Vick, Goodman, and Duke began to state — not simultaneously — that Mr. Anderson was unfair, authoritative, unworthy, good for nothing individual. Mr. Anderson did not return a response, but was continually trying to observe Inmate Reid who was pacing the floor of dormitory B. When inmates Vick, Goodman, and Duke stopped talking, Inmate Goodman, who was standing near Inmate Reid, grabbed Inmate Reid by the right arm and led him to the rear of dormitory B, stopping near the rear exit door. Standing near the door for approximately one-half minute, Inmate Reid turned and ran out of it. The time was approximately 9:45 p.m. Mr. Anderson turned and departed dormitory B via its front door. . . ."
It should be noted that inmate Goodman is not a party to this appeal.
"Aiding and Abetting Another to Commit a Violation of Department or Institutional Rules" is defined as follows: "To help, assist or facilitate the violation of a department or institutional rule by encouragement or counsel as to its commission with words, acts, support, presence or assistance rendered." Administrative Regulation, # 403 (h)(2)(65). A literal reading of that definition would automatically make any inmate present during a rule infraction guilty of aiding and abetting. Of course, it is well established in every state in the union that a person's mere presence at the scene of a crime will not support any type of liability for that crime.
In the case sub judice, it was well established that Reid was moving about at will within the compound before Vick and Duke became involved. Anderson had tried to control Reid's movements while they were in the laundry area but could not. Reid then, either because he was drunk or for unknown reasons, went to the dormitory where Vick and Duke happened to be. Anderson's statement that Vick and Duke "caused" Reid to escape was a conclusion not based on the facts.
There is substantial evidence from the record that Duke and Vick called Anderson names, but nothing more. There is also substantial evidence that both Vick and Duke had "stopped talking" and evidently withdrawn from the conversation before Reid ever left the building. There is no evidence that either Duke or Vick ever "encouraged or counseled" Reid in any way. From the record it appears that they had no contact with him whatsoever and, in fact, it was inmate Goodman who was standing near Reid. There is no evidence of any intent on their part to aid in his escape; namely, there were no plans, schemes, or designs, and no evidence that they were aware that he was going to escape or that he would even leave the building. While their actions may have amounted to a rule infraction of some other type, there is not one iota of evidence to support the charge from which they have appealed. *Page 477 
The rule requiring "substantial evidence" means that an inmate will not be found guilty except by an appropriate quantum of evidence. If a prison official finds an inmate guilty, it is the responsibility of the reviewing courts to determine whether the decision was based on substantial evidence or whether the decision was arbitrary. Aikens v. Lash,514 F.2d 55 (7th Cir. 1975).
The rule that there be substantial evidence is not satisfied merely by setting out the facts of an incident in a written statement; those facts must also be material to the offense with which an inmate is charged. See Wilburn v. State,432 So.2d 524 (Ala.Cr.App. 1983); Gibson v. State, 411 So.2d 1297
(Ala.Cr.App. 1982); Washington v. State, 405 So.2d 62
(Ala.Cr.App. 1981). This, then, becomes a second ground for reversal.
Finally, there is the question of proper jurisdiction for this writ. From the record, it appears that the Corrections Department has housed the appellants in at least three different locations since the time of the incident. Since the statutes of this State do not specifically cover this situation, we feel that the court in which the petition was originally filed should retain jurisdiction. Otherwise, we would have the situation in which appellants could not pursue their remedies to a final determination because of their arbitrary and periodic relocation by the Corrections Department.
For these reasons, this cause is reversed and remanded with instructions.
REVERSED AND REMANDED.
All the Judges concur.