SHAW, Judge.
David Patterson appeals the circuit court’s summary denial of his petition for a writ of habeas corpus, in which he alleged that he was denied due process in a prison disciplinary proceeding. He was found guilty of violating Rule No. 90, Regulation No. 403, Alabama Administrative Code (Department of Corrections) (consumption or use of, or being under the influence of, alcohol, narcotics, or other intoxicants). Patterson was sanctioned with the loss of 45 days’ store, telephone, and visitation privileges, and the loss of 1 year, 5 months, and 28 days of good time. After receiving a motion to dismiss Patterson’s petition from the Department of Corrections (“DOC”) and Patterson’s response to that motion, the circuit court summarily denied the petition.
In his petition and on appeal, Patterson argues that he was denied due process during the disciplinary proceeding because, he claims, the hearing officer who presided over the disciplinary proceeding, Sgt. Charles Bromley, was also involved in investigating the events forming the basis of the prison disciplinary. After reviewing the record, we must agree.
Initially, we note that DOC did not address Patterson’s specific allegation in its motion to dismiss, nor does it address the allegation in its brief on appeal. Rather, DOC makes a general argument that Patterson received the due process he is to be accorded under Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). See, e.g., Smith v. State, 882 So.2d 883, 884 (Ala.Crim.App.2003)(noting that *608 when the State responds to a habeas petition by making broad, general arguments instead of addressing the petitioner’s specific claims, the State has failed to refute the facts alleged by the petitioner and those facts must be accepted as true). However, DOC attached the disciplinary report to its motion to dismiss. That report shows that Patterson’s allegation is, in fact, true — Sgt. Bromley was not only the hearing officer who presided over the disciplinary proceeding, he was also involved in investigating the incident.
The disciplinary report lists Officer Stanley Williams as the arresting officer, but it lists Sgt. Bromley as the hearing officer and as the officer who served Patterson with notice of the rule violation. In addition, the report sets forth the circumstances of the violation as follows:
“On February 23, 2003 at approximately 1:00 P.M., Officer Stanley Williams took a urine sample from you inmate David Patterson. Your urine sample inmate Patterson was placed in a sealed container and was sent for testing at Staton Drug Lab. On 2-24-03 at approximately 10:19 A.M. your urine sample tested positive for marijuana. During questioning by Sgt. Bromley you admitted to smoking marijuana on this date and days prior.”
(C. 22.)(Emphasis added.) The report indicates that Patterson also admitted the rule violation to Officer Williams; Officer Williams testified at the hearing as follows:
“I collected a sample from Patterson on 2-23-03. The sample tested positive for marijuana. Patterson admitted to me that he had been smoking and that he was a convict and convicts admit their wrong. Patterson also asked me to get him some help and help him get in SAP.”
(C. 22.) Finally, the disciplinary report sets out the hearing officer’s, i.e., Sgt. Bromley’s, basis for his finding that Patterson had violated Rule No. 90 as follows:
“This finding is based on the individual specimen reported and the chain of custody presented by the arresting officer. Also, Officer Williams’s testimony that Inmate Patterson admitted he has smoked marijuana since his last dirty urine. Also, based on Inmate Patterson’s admission during questioning [that] he was smoking marijuana.”
(C. 23-24.)(Emphasis added.) Based on our review of the record, it is clear that Sgt. Bromley’s reference to “Inmate Patterson’s admission during questioning” was, in fact, a reference to Patterson’s admission to Sgt. Bromley during the investigation.[1]
This Court has repeatedly recognized the right of an inmate to a fair and impartial disciplinary hearing. See Perry v. State, 511 So.2d 268 (Ala.Crim.App.1987), and Vick v. State, 448 So.2d 474 (Ala.Crim.App.1984). “Members of a prison disciplinary committee must be fair and impartial.” Walden v. State, 552 So.2d 192, 193 (Ala.Crim.App.1989). As this Court noted in Williams v. State, 461 So.2d 1335, 1338 (Ala.Crim.App.1984), “[t]he loss of ‘good time’ is a sufficient deprivation of liberty to warrant a prior due process hearing before an impartial board composed of persons who were not directly involved in the incident.”
In Ex parte Crear, 460 So.2d 1208 (Ala.1983), the Alabama Supreme Court addressed an issue similar to the one presented in this case, stating, in part:
“The Court [in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 *609 (1974),] declined to rule that the Adjustment Committee which conducted the required hearings was ‘not sufficiently impartial to satisfy the Due Process Clause.’ Id., 418 U.S. at 571, 94 S.Ct. at 2982. It appears, however, that the challenge in Wolff was to the makeup of the Committee and its guidelines, not, as here, to the status of one of its members as being involved in the case....
[[Image here]]
“... [T]he Supreme Court in Wolff left open the possibility that an insufficiently impartial disciplinary board would serve as grounds for habeas corpus.
“Our research has not disclosed any further pronouncements by the Supreme Court of the United States on this specific aspect of the Wolff holding. The case most closely on point among federal circuit court decisions appears to be Walker v. Hughes, 558 F.2d 1247 (6th Cir.1977), in which the court, finding no due process violation, noted that ‘[n]either the reporting nor the investigating officer could be a member of the Adjustment Committee.’ Id., at 1258....
“The record before us under petitioner Crear’s 39(k) statement shows he appended to his petition for habeas corpus the following amendment to the Alabama Board of Corrections’ Administrative Regulation 408, ‘Disciplinary Board Hearings Procedure for Major Violations,’ dated March 12,1976:
“ ‘Paragraph 4d(6)(b), Administrative Regulation 403 is changed to read as follows:
“ ‘ “(b) The disciplinary board must be impartial meaning that a board member must not be the arresting officer, witness to the actual incident, the investigating officer, a party to the incident, the victim of the incident, or an official who has approval authority over the disciplinary.” ’
“(Emphasis in original.) Crear, in his petition and supporting affidavit, asserts that Officer Charles LaPrade witnessed the event and helped arrest him immediately after it took place. Officer La-Prade signed the notice form and wrote that Crear refused to sign for receipt of the notice or to specify witnesses desired. Officer LaPrade was one of the three members of the disciplinary board which held Crear’s hearing and recommended revocation of his good time credits.
“The State argues that there is no evidence that LaPrade witnessed the event or arrested Crear, and that thus there is no support for Crear’s assertions. This argument does not negate the fact that Crear has raised a factual question, which, if Crear’s contentions prove correct, would raise a prima facie case of partiality under the Board of Corrections’ own regulation. Nothing in the record contradicts Crear’s statements regarding Officer LaPrade. Officer Randelson, who was the officer involved in Crear’s alleged assault and who was also the reporting officer, reported that an unidentified shift commander advised him what to do with Crear immediately before the incident. The statements of both Officer Randel-son and Inmate Brown refer to unidentified officers who ‘broke it up.’ Crear contends that LaPrade was the shift commander and one of the arresting officers.
“Crear’s petition for habeas corpus thus raised at least one issue which merited a hearing in circuit court.”
460 So.2d at 1208-10.
In addition, in addressing a similar claim in Shelton v. State, 640 So.2d 39 (Ala.Crim.App.1993), this Court stated:
“The appellant contends that he was denied due process because the official who reviewed the findings and decision *610 of the disciplinary board on appeal was also the investigating officer. The prison regulations provide for an appeal to the commissioner of corrections by an inmate found guilty of a violation of prison regulations. The record reflects, as the appellant contends, that the actions of the disciplinary board were reviewed on appeal by ‘Warden Burton,’ who apparently had been designated to review appeals of inmates for the commissioner. If the reviewing officer had, in fact, investigated the charges, and if the evidence developed as a result of the investigation resulted in the disciplinary actions being brought against the appellant, as is alleged, the reviewing officer could hardly be impartial. Because the record does not show that the reviewing officer was involved in the investigation of the charges, we instruct the trial court to determine in the hearing on remand if the officer was involved and, if so, to what extent.”
640 So.2d at 41.
Both Shelton and Crear were remanded for hearings because, although the petitioners’ allegations were unrefuted, there was no evidence in the record to support the allegations. See also Vick, supra. However, in Coleman v. State, 642 So.2d 532 (Ala.Crim.App.1994), there was evidence in the record indicating that the reviewing officer had participated in the investigation of the disciplinary infraction and this Court reversed the denial of habe-as relief, stating:
“Last, the appellant asserts that his due process rights were violated in the fourth disciplinary action because Deputy Warden Kitzinger acted as the reviewing officer and approved the hearing officer’s findings of guilt after he had participated in the investigation and had identified the radio [that the appellant was alleged to have stolen from Warden Nagle] found in the trash can as belonging to Warden Nagle.
“The disciplinary report relating to this violation states the following:
“ ‘The hearing officer also based his finding on Deputy Warden Kitzinger identifying the radio as belonging to Warden Nagle which substantiated the arresting officer’s testimony.’
“The report also reflects that Kitzinger acted as the reviewing officer and approved the hearing officer’s findings. In a similar case, Judge Patterson stated:
“ ‘If the reviewing officer has, in fact, investigated the charges, and if the evidence developed as a result of the investigation resulted in the disciplinary actions being brought against the appellant, as is alleged, the reviewing officer could hardly be impartial.’
“Shelton v. State, 640 So.2d 39, 41 (Ala.Cr.App.1993).
“It appears that in this case the disciplinary action was based in part on the fact that Kitzinger identified the item as the stolen property. We cannot say under these circumstances that the reviewing officer was impartial. Shelton.
“The appellant’s petition for a writ of habeas corpus relating to the fourth disciplinary action for theft is due to be granted.”
642 So.2d at 534-35.
This case is more akin to Coleman than it is to Shelton and Crear. In this ease, not only are Patterson’s allegations unre-futed, the evidence presented by DOC proves that Patterson’s allegations are, in fact, true. The record clearly shows that Sgt. Bromley was not only the hearing officer, but that he was also involved in the investigation of the charges. In addition, it is apparent from the record, as it was in Coleman, that the disciplinary action, as well as Sgt. Bromley’s findings as a hearing officer, was based, at least in part, on evidence obtained by Sgt. Bromley during his investigation, i.e., Patterson’s admis *611 sion of guilt. Given that Sgt. Bromley’s participation in the investigation resulted in an admission of guilt by Patterson, we cannot say that Sgt. Bromley’s participation was relatively minor. We recognize that not every case in which the hearing officer or the reviewing officer was involved in the investigation of the disciplinary infraction would require a reversal or even a remand for further proceedings; the level of involvement is a crucial factor to be considered. See Martin v. State, 562 So.2d 294, 295 (Ala.Crim.App.1990)(“[T]he mere fact that a committee member ‘witnessed’ the incident giving rise to the disciplinary action does not in and of itself support a presumption of prejudice and bias.”), and Walden, 552 So.2d at 193 (“[T]he mere fact that Officer Sims [who was a member of the three-person disciplinary committee] ‘witnessed’ the statements of two potential witnesses [whose statements did not implicate the petitioner] does not indicate that he was an investigating officer. ‘[S]uch a minimal involvement clearly was not such as to affect [his] objectivity as a member of the committee that heard the complaint.’ Jensen v. Satran, 688 F.2d 76, 78 (8th Cir.1982).”). However, Sgt. Bromley’s involvement here was substantial; it resulted in an admission of guilt by Patterson that Sgt. Bromley later relied on, at least in part, to find Patterson guilty of the disciplinary infraction and to recommend, among other sanctions, the removal of all of Patterson’s remaining good time.[2] Under these circumstances, as in Coleman, supra, we cannot say that Sgt. Bromley, as the hearing officer, was impartial. Therefore, the circuit court erred in denying Patterson’s habeas corpus petition.
Based on the foregoing, the judgment of the circuit court is reversed and this ease is remanded for the circuit court to grant Patterson’s petition for a writ of habeas corpus.
REVERSED AND REMANDED.
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur.

. The record reflects that during questioning at the disciplinary hearing Patterson denied smoking marijuana.

. We are aware that, in addition to Patterson's earlier admission to him, Sgt. Bromley also relied on Officer Williams's testimony at the disciplinary hearing that Patterson had admitted to him that he had smoked marijuana, and, further, on the urine sample analyzed by an independent third party and found to be positive for marijuana. However, we cannot discount the fact that Sgt. Bromley was faced with a situation where Patterson had admitted to him during the investigation to smoking marijuana at the time of the infraction but then stood before him at the disciplinary proceeding and denied smoking marijuana at the time of the infraction and then further stated that he did not remember whether he had smoked marijuana since his last positive urine sample; certainly, that conflict between Patterson’s testimony at the disciplinary proceeding and Patterson's earlier admission to him could not have reasonably escaped Sgt. Bromley’s attention. Further, this Court cannot overlook the fact that, after being faced with that stark contrast in Patterson’s earlier admission and subsequent denial, the sanction recommended by Sgt. Bromley included the loss of all of Patterson’s remaining good time. Clearly, that sanction was within the range of punishment a hearing officer was authorized to recommend, and, given the circumstances — that this was apparently not Patterson's first violation of this regulation, that Patterson apparently admitted to two officers (Williams and Bromley) that he had smoked marijuana, and the presence of the independently conducted urinalysis — this sanction was quite possibly appropriate. However, based on the totality of the circumstances, i.e., Sgt. Bromley's involvement in the investigation and his reliance, in part, on Patterson's admission to him during that investigation, and, finally, on the fact that Sgt. Bromley recommended the removal of all of Patterson's remaining good time, we conclude that reversal is necessary in this case.